IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENEVA ZBORALSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 06 C 3772 |
| | ) |
| TOM MONAHAN, in his individual | ) |
| and official capacities; et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Geneva Zboralski brings a motion to proceed *in forma pauperis* in an action against Tom Monahan, Tim Budz, Darryl Sanders, Steve Strock, Joanne Martin, Diane Fransen, Lori Berman, and Brenda Wilts. She alleges claims against the defendants in their individual and official capacities for violations of her constitutionally-protected Fourth and Fourteenth Amendment rights, invasion of privacy based on intrusion upon seclusion, and assault and battery. For the following reasons, we grant plaintiff's motion to proceed *in forma pauperis*.

Pursuant to 28 U.S.C. § 1915(a), we may authorize plaintiff to proceed *in forma pauperis* if she demonstrates an inability to pay the required costs and fees. In her financial affidavit, plaintiff indicates that she is unemployed, has received no more than $200 from any source in the last twelve month, has less than $200 in any cash, savings, or checking account, and owns no real estate or personal property asset with a current market value over $1,000. In light of these representations, plaintiff has evidenced her financial need.

Our inquiry, however, does not end with the finding of indigence. As part of the initial

review of a petition to proceed *in forma pauperis*, we analyze the claims and dismiss the complaint if we determine that the action is frivolous or malicious, it fails to state a claim upon which relief may be granted, or seeks damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(I)-(iii); Alston v. Debruyn, 13 F.3d 1036, 1039 (7th Cir.1994). For purposes of this decision, we take plaintiff's allegations as true. *See* Zimmerman v. Tribble, 226 F.3d 568, 571 (7th Cir.2000).

Unlike many *in forma pauperis* petitioners, plaintiff is represented by counsel in this case. While representation does not preclude plaintiff from proceeding *in forma pauperis* (Neitzke v. Williams, 490 U.S. 319, 330, n9 (1989) ("it is possible for a plaintiff to file *in forma pauperis* while represented by counsel")), we do not construe the pleadings as liberally as we would if she appeared *pro se*. *Cf.* Clabault v. Shodeen Management, 406 F.Supp.2d 877, 879 (N.D.Ill.2005). In analyzing whether plaintiff's complaint fails to state a claim upon which relief may be granted, however, we accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. McDonald v. Household Intern., 425 F.3d 424, 425 (7th Cir.2005).

We take the following facts from plaintiff's complaint. Since September 2000, plaintiff regularly visited a patient at the Illinois Department of Human Services Treatment and Detention Facility ("Facility") in Joliet, Illinois. From May 4, 2005 to May 11, 2005, plaintiff was subjected to patdown searches by defendant Martin, a Security Therapist Aid II at the Facility, in which defendant Martin placed her fingers in plaintiff's vaginal area and required plaintiff to remove her shoes prior to being allowed to visit the patient. Such searches occurred at least four times during the aforementioned time period.

After plaintiff's complaints to Bernard Akpan, an Exec. II at the Facility, and

defendant Strock, the Assistant Security Director of the Facility, and facility patient Brad Lieberman's complaints to defendant Budz, Director of the Facility, defendant Sanders, Security Director of the Facility, and defendant Strock, plaintiff was no longer required to submit to patdown searches by defendant Martin. Rather, plaintiff's visits were preceded by a Rapiscan scan of her person. According to plaintiff's complaint, a Rapiscan machine is an electronic screening device used to scan a person's entire body. "These machines produce a naked image of the person and can also produce evidence of highly sensitive details such as the following: mastectomies, colostomy appliances, penile implants, catheter tubes, and the size of a person's breasts and genitals" (cplt., ¶ 2). From May 17, 2005 to June 19, 2005, plaintiff was subjected to 20 to 25 Rapiscan scans. Plaintiff's complaint further alleges that other Facility staff members were allowed to view her scanned image, her scanned image was not erased from the machine, and staff members viewed her image hours after she was scanned, all without her consent (cplt., ¶¶ 24-26, 29). Additionally, while later told that she should have had the choice between the Rapiscan scan or a physical patdown prior to visiting a patient, plaintiff was never informed of such a choice during the two months she underwent the Rapiscan scans. Based on these factual allegations, plaintiff alleges that defendants violated her Fourth and Fourteenth Amendment rights to be free of unreasonable searches and committed the torts of invasion of privacy based on intrusion upon seclusion and assault and battery.

We turn first to plaintiff's claim of unlawful search under the Fourth and Fourteenth Amendments. She brings her claims under 42 U.S.C. §1983, which protects a citizen from "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by an action of any person acting "under color of any statute, ordinance, regulation, custom, or

usage, of any State or Territory or the District of Columbia." As employees at an Illinois Department of Human Services Treatment and Detention Facility are properly considered state actors, plaintiff rightfully asserts her constitutional claims under § 1983.

As we read her complaint, plaintiff makes two unlawful search allegations: one based on defendant Martin's patdown searches and the other based on the remaining defendants' use and/or approval of the use of the Rapiscan machine and preservation of the Rapiscan images.

Plaintiff sufficiently pleads a search that "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113 (1984). Searches can occur either in general criminal law enforcement, or, as here, in the civil context for protection of health and safety. *See* Edmond v. Goldsmith, 183 F.3d 659, 662 (7th Cir. 1999) (recognizing the difference between searches related to criminal law enforcement and searches related to border security). "[T]he Supreme Court has insisted that 'to be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing, 'save in cases of "special need" based on concerns *other than crime detection.*'" *Id.* (*citing* Chandler v. Miller, 520 U.S. 305, 313-14 (1997)). In terms of such "special need" searches, the majority of cases fall into three categories: (1) airport security searches; (2) border searches; and (3) searches of incarcerated or detained persons. With regard to an airport search, although airport travelers have impliedly given consent, the search must be "narrowly tailored to the purpose for which it was legitimately undertaken." U.S. v. McDonald, 100 F.3d 1320, 1331, n5 (7th Cir.1996) (cataloguing cases). For border searches, border agents or personnel can conduct a search based on reasonable suspicion, rather than probable cause, because the expectation of privacy at the border is

reduced. U.S. v. Yakubu, 936 F.2d 936, 939 (7th Cir.1991). *See also* Anderson v. Cornejo, 284 F.Supp.2d 1008, 1025-1026 (N.D.Ill.2003) (while "routine questioning and searching of luggage at the border does not require any level of suspicion ... [p]erforming a standard patdown search[] requires some level of suspicion that the person has contraband on his or her person, with the level of suspicion required being balanced against the level of indignity imposed on the traveler"). Finally, courts have found that in the prison context, searches may be more intrusive. *See* Bell v. Wolfish, 441 U.S. 520, 558 (1979) (finding that visual cavity searches of convicted prisoners and pretrial detainees do not violate the Fourth Amendment, stating that "[t]he Fourth Amendment prohibits only unreasonable searches, and under the circumstances, we do not believe that these searches are unreasonable"); Hudson v. Palmer, 468 U.S. 517, 525-26 (1984) (finding that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"). *But see* Thompson v. County of Cook, 412 F.Supp.2d 881, 890 (N.D.Ill.2005) (cataloguing cases in which "courts have generally held that persons detained for minor offenses not involving weapons or drugs may not be subjected to a strip search or visual cavity search absent reasonable suspicion that the particular arrestee or detainee is concealing such items").

In Bell, the Court noted that the reasonableness test under the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." 441 U.S. at 559. *See also* Stanley v. Henson, 337 F.3d 961, 964 (7th Cir.2003); Thompson, 412 F.Supp.2d at 891.

Like other searches conducted for safety and security purposes, search of plaintiff upon

entering the Facility must be reasonable. And while we recognize that by entering a state building housing detainees, plaintiff may have had a reduced expectation of privacy, we find that she has sufficiently pled an unreasonable search with respect to both the patdowns and Rapiscan scans. She was neither a patient nor a detainee. Based on her complaint, there is no reason to believe that defendants suspected hidden contraband. And although we do not decide at this point whether the patdown searches or the Rapiscan scans are in fact unreasonable searches, plaintiff's allegations are sufficient to state a claim at this stage in the litigation.

Defendant Martin, as a participant in the allegedly unlawful patdown searches, can be held liable in his individual capacity. Officials of the state, however, cannot be sued in their official capacities under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). Because a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" (*id.*, at 71), suing a state official in his or her official capacity raises Eleventh Amendment sovereign immunity and § 1983 definition problems. First, the Eleventh Amendment bars § 1983 suits unless the state has waived its immunity or Congress has exercised its power under section 5 of the Fourteenth Amendment to override the immunity. *Id.* at 66. (discussion in dicta). Second, the definition of § 1983 bars suits against state officials, when sued in their official capacity because the state (and therefore, an official sued as the state) is not a "person" under the definition of § 1983. *Id.*, at 64.[1]

---

[1] That does not mean that a state officer may not be sued in his or her individual capacity for actions taken in his or her official capacity. The Supreme Court clarified Will in Hafer v. Melo, 502 U.S. 21 (1991), rejecting the reading of Will to mean that § 1983 does not authorize suits against state officers for damages arising from official acts. In Hafer, the Court found that defendant could be held personally liable under § 1983 for discharging respondents, even though she was acting in her official capacity as auditor general of Pennsylvania. The Court held that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983 [and] [t]he Eleventh Amendment does not bar such suits..." *Id.*, at 31.

Therefore, plaintiff can only maintain an individual liability suit against defendant Martin.

With regard to the allegedly unlawful Rapiscan searches, plaintiff alleges that defendants Fransen, Berman and Wilts personally scanned plaintiff (cplt., ¶ 23). Thus, those defendants can be sued in their individual capacities under § 1983. The question remains as to whether plaintiff has any claim against remaining defendants, Monahan, Budz, Sanders, and Strock, for individual liability. "[A]n official satisfies the personal responsibility requirement of section 1983 ... if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he 'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye ....'" Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir.1995) (internal citations omitted). Plaintiff successfully pleads a claim against defendant Strock in his individual capacity, because she personally complained to him about the scans (cplt., ¶28). And based "on information and belief," plaintiff claims that defendants Monahan, Budz and Sanders "knew of and approved the scanning of Plaintiff" (*id.*, ¶ 30). Such an allegation, while vague, is sufficient at this stage in the litigation.

Therefore, although we find that, under Will, plaintiff cannot continue with her § 1983 claims against any defendant in his or her official capacity, we allow plaintiff to continue with her claims against defendant Martin, in her individual capacity, for the allegedly unlawful patdown searches, and defendants Monahan, Budz, Sanders, Strock, Fransen, Berman and Wilts, in their individual capacities, for the Rapiscan searches.

Second, we address plaintiff's claim of invasion of privacy based on intrusion upon seclusion. The Illinois Supreme Court has not officially recognized the privacy tort. The majority of state appellate districts, however, have explicitly adopted the tort, as have our colleagues in the Northern and Central Districts of Illinois (*See* Johnson v. K Mart Corp., 723

N.E.2d 1192, 1196 (Ill.App.Ct. 1 Dist.2000); Benitez v. KFC Nat'l Mgmt. Co., 714 N.E.2d 1002, 1007 (Ill.App.Ct. 2 Dist.1999); Melvin v. Burling, 490 N.E.2d 1011, 1013 (3d Dist.1986); Davis v. Temple, 673 N.E.2d 737, 744 (Ill.App.Ct. 5 Dist.1996); Munoz v. Chicago School Reform Bd. of Bd. of Trustees, 2000 WL 152138, *11-12 (N.D.Ill.2000); Acuff v. IBP, Inc., 77 F.Supp.2d 914, 921 (C.D.Ill.1999)), and the Seventh Circuit has acknowledged that the tort is "generally recognized." Muick v. Glenayre Electronics, 280 F.3d 741, 744 (7th Cir.2002). Thus, at this point we do not dismiss plaintiff's privacy count as an improper claim.

Where recognized, a *prima facie* case for invasion of privacy based on intrusion upon seclusion requires "(1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is offensive to a reasonable person; (3) the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering." Acosta v. Scott Labor LLC, 377 F.Supp.2d 647, 649 -650 (N.D.Ill.2005). *See also* Davis, 673 N.E.2d at 744 (*citing* Melvin, 490 N.E.2d at 1013-14); Mlynek v. Household Finance Corp., 2000 WL 1310666, *3 (N.D.Ill.2000). And the Illinois Supreme Court, without explicitly recognizing the tort, has noted that the tort would require "some type of highly offensive prying into the physical boundaries or affairs of another person ...." Lovgren v. Citizens First Nat'l Bank, 534 N.E.2d 987, 989 (Ill.1989).

To successfully plead invasion of privacy based on intrusion upon seclusion, plaintiff must allege (1) that defendant accessed "private facts" about plaintiff and (2) that plaintiff had made an effort to keep those facts private. Acosta, 377 F.Supp.2d at 650 (internal citations omitted). Citing the dissenting opinion in Green v. Chicago Tribune Co., 675 N.E.2d 249, 260 (Ill.App.Ct.1 Dist.1996), the Acosta court recognized that "[e]xamples of inherently 'private facts' include 'a person's financial, medical, or sexual life, or a peculiarly private fact of an

intimate[,] personal nature.'" *Id.* The <u>Acosta</u> court compared such "private facts" to "matters of public record, such as a name, address, date of birth and fact of marriage ...." *Id.* Plaintiff's allegations in this case that her "virtual" naked image was captured through the Rapiscan machine, kept, and viewed hours later, are enough at this stage to allege that the defendants accessed inherently private facts about plaintiff. The fact that Rapiscan machines can show evidence of mastectomies, colostomy appliances, catheter tubes, and the size of a person's breasts, further convince us that such a picture may invade a person's private facts. And the very fact that one wears clothing indicates that such facts are meant to be kept private. The alleged search is further unreasonable as plaintiff was neither a patient nor under any criminal investigation. *Cf.* <u>Davis</u>, 673 N.E.2d at 744.

Plaintiff can maintain a claim for individual liability against defendants Monahan, Budz, Sanders, Strock, Fransen, Berman and Wilts for the privacy tort stemming from the use of the Rapiscan machine. Because she did not allege any such participation by defendant Martin, however, plaintiff cannot maintain the privacy tort action against Martin.

Finally, we turn to plaintiff's assault and battery claim. Under Illinois law an assault is defined as "a reasonable apprehension of an imminent battery" (<u>Fantauzzo v. Corfu Foods</u>, 2006 WL 273543, *2 (N.D.Ill.2006) (*citing* <u>Rosenberg v. Packerland Packing Co., Inc.</u>, 370 N.E.2d 1235, 1238 (Ill.App.Ct.1 Dist.1977)), and "battery" is defined as "the unauthorized touching of the person of another." <u>In re Estate of Allen</u>, 848 N.E.2d 202, 210 (Ill.App.Ct. 2 Dist.2006). Battery does not require an injury (<u>Loera v. National R.R. Passenger Corp. (Amtrak)</u>, 2004 WL 2005806, *4 (N.D.Ill.2004)), and "[t]o be liable for battery, the defendant must have done some affirmative act intended to cause an unpermitted contact." <u>Walls v. Lombard Police Officers</u>, 2002 WL 548675, *6 (N.D.Ill.2002) (*citing* <u>Glowacki v. Moldtronics,</u>

Inc., 636 N.E.2d 1138, 1140 (Ill.App.Ct. 2 Dist.1994)). By alleging that defendant Martin caused plaintiff to reasonably believe that she would place her fingers in plaintiff's vaginal area – an unwanted contact – and physically touched plaintiff in such a manner at least four times, plaintiff sufficiently alleged an assault and battery claim against defendant Martin.

It is unclear from plaintiff's complaint whether she is asserting a claim against only defendant Martin, or also against her superiors under a *respondeat superior* theory. Under *respondeat superior*, "for an employer to be liable for the torts of its employees, a plaintiff must show that a principal/agent relationship exists and that the agent committed a tort while acting in the scope of his employment." Prothro v. National Bankcard Corp., 2006 WL 2252555, *6 (N.D.Ill.2006) (*citing* Restatement (Second) of Agency § 219(1)). Employer liability can attach for either negligent or intentional torts. *Id.* (*citing* Burlington Indus. V. Ellerth, 524 U.S. 742, 755-56 (1998)).

The concept of *respondeat superior* is more complicated when the employer is a state official or agency. As here, where defendants (save Martin) are not charged with personal participation in the assault and battery, a *respondeat superior* claim must be construed as a suit against the state. *See* Alegria v. Carter, 1999 WL 1032598, *3 (N.D.Ill.1999). Sovereign immunity attaches (*see* Currie v. Lao, 592 N.E.2d 977, 981 (Ill.1992)), and the Court of Claims has exclusive jurisdiction "unless the State employee exceeds the scope of employment by violating laws or regulations of government agencies." Sneed v. Howell, 316 N.E.2d 336, 341 (Ill.App.Ct. 5 Dist.1999). *See also* 705 ILCS 505/8(d). As all *respondeat superior* claims must stem from an action taken within the scope of employment, and such actions necessarily invoke sovereign immunity, we lack jurisdiction to hear such claims. Therefore, while the assault and battery claim may lie as against defendant Martin, for actions taken outside the scope of her

employment, plaintiff cannot maintain an assault and battery *respondeat superior* claim against any of Martin's supervisors.

## CONCLUSION

For the reasons stated above, we grant plaintiff's motion to proceed *in forma pauperis*. We dismiss her section 1983 claims against defendants in their official capacities and allow her to proceed on the remainder of her claims.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

Aug. 14, 2006.